**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-cv-61042-ALTMAN**

**ERASMO DE JESUS GONZALEZ ACOSTA,**

*Petitioner,*

*v.*

**GARRETT RIPA**, *et al.*,

*Respondents.*
_______________________/

# ORDER

Erasmo de Jesus Gonzalez Acosta filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging his continued detention in the custody of U.S. Immigration and Customs Enforcement ("ICE"). *See generally* Petition [ECF No. 1]. Gonzalez Acosta alleges that his continued detention—"following an approved credible fear determination, without a proper bond hearing on the merits, and through multiple stages of his immigration proceedings"—"is unlawful and warrants habeas relief." *Id.* ¶ 4. The Respondents counter that Gonzalez Acosta "is in expedited removal proceedings and subject to the INA § 235(b)(1)'s . . . requirement of mandatory detention without bond." Response [ECF No. 7] at 2 (cleaned up). After careful review, we **DISMISS** the Petition *without prejudice* for lack of subject-matter jurisdiction.

## THE FACTS

Gonzalez Acosta is a "native and citizen of Venezuela." Declaration of Deportation Officer Vivian A. Delgado ("Delgado Decl.") [ECF No. 7-2] ¶ 5. On June 25, 2021, U.S. Border Patrol officers encountered Gonzalez Acosta "within fourteen days of his entry into the United States and within 100 air miles" from the United States-Mexico border. *See id.* ¶ 6. Gonzalez Acosta admitted that his crossing "was illegal" and that he didn't "possess any immigration documents that would allow him

to . . . remain in the United States[.]" Form I-213 [ECF No. 7-1] at 4. Two days later, the U.S. Department of Homeland Security ("DHS") determined that Gonzalez Acosta was inadmissible because he wasn't "in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document" and placed him in expedited-removal proceedings under § 235(b)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(1). Notice and Order of Expedited Removal [ECF No. 7-3] at 2.

On July 23, 2021, DHS granted Gonzalez Acosta parole under § 212(d)(5)(A). *See* Parole Documents [ECF No. 7-5] at 2–3. The parole authorization was "valid for one year" and warned that it would "automatically terminate" at the end of that period unless ICE extended it. *Id.* at 3. DHS didn't extend Gonzalez Acosta's parole, so it expired on July 23, 2022. *See* Resp. at 7. When he entered the country, Gonzalez Acosta also "claimed a fear of persecution or torture if returned to . . . Venezuela." Form I-213 at 4. On January 12, 2026, an asylum officer determined that Gonzalez Acosta hadn't established "a credible fear . . . pursuant to 8 CFR 208.30[.]" Record of Negative Credible Fear Finding [ECF No. 7-7] at 2. Gonzalez Acosta requested review of that determination by an Immigration Judge ("IJ"). *Id.* at 3. Four days later, an IJ disagreed with the asylum officer and ordered that "[t]he DHS credible fear determination is VACATED[.]" January 16, 2026 IJ Order [ECF No. 7-8] at 3. DHS then served Gonzalez Acosta with a Notice to Appear ("NTA") and initiated removal proceedings under § 240 of the INA, 8 U.S.C. § 1229a. *See* Notice to Appear [ECF No. 7-9] at 2. The NTA charged Gonzalez Acosta with inadmissibility both as an alien "present in the United States without being admitted or paroled" and as an immigrant who lacked "a valid unexpired immigrant visa" or other required entry document. *Id.* at 5.

On March 23, 2026, an IJ held a preliminary hearing and "sustained the charges of inadmissibility in the NTA." Delgado Decl. ¶ 14. Gonzalez Acosta then requested "a custody redetermination[.]" *Id.* ¶ 15. On June 1, 2026, an IJ "conducted an individualized bond hearing" and,

"[a]pplying the [nine] *Guerra* factors," denied Gonzalez Acosta's request for bond. June 1, 2026 IJ Order [ECF No. 7-10] at 2 (cleaned up & emphasis added). The IJ found that Gonzalez Acosta "ha[d] not met his burden of proof in support of setting a bond." *Ibid.* The next day, another IJ ordered Gonzalez Acosta removed to Venezuela. *See* June 2, 2026 IJ Order [ECF No. 7-11] at 2–5. Gonzalez Acosta "reserved" his right to appeal, *id.* at 5, and timely appealed the removal order to the BIA, *see* BIA Filing Receipt [ECF No. 7-12] at 2. That appeal is still pending, and Gonzalez Acosta remains in ICE custody. *See* Delgado Decl. ¶¶ 16–17.

## THE LAW

District courts have the authority to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Court's jurisdiction to grant writs extends "to [an alien's] challenge [to] detention that is without statutory authority." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

## ANALYSIS

Gonzalez Acosta's Petition rests on a straightforward premise. According to Gonzalez Acosta, "the Immigration Judge's favorable credible fear review and the commencement of removal proceedings before the Immigration Court" "materially altered the procedural posture of the case" to be outside the scope of § 1225. Reply [ECF No. 8] at 2. He says that the Respondents haven't "clearly explain[ed] how [their asserted detention authorities] apply in light of the[se] significant procedural developments that occurred after Petitioner's initial expedited-removal processing." *Id.* at 1 (cleaned up). The Respondents insist that § 1225(b)(1) still applies because the "Petitioner is lawfully detained

as an applicant for admission under expedited removal proceedings." Resp. at 7.[1] After careful consideration, we find that we lack jurisdiction to resolve that dispute.

Under § 1225(b)(1), "[i]f an immigration officer determines that an alien . . . is inadmissible . . . , the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i) (cleaned up). Section 1225(b)(1)(A)(iii), in turn, permits the expedited-removal provisions to be applied to certain other aliens. The statute describes such an alien, among other things, as one "who has not been admitted or paroled into the United States" and who hasn't affirmatively established the specified two-year period of continuous physical presence. § 1225(b)(1)(A)(iii)(I)–(II). If the alien indicates an intention to apply for asylum, the immigration officer "shall refer the alien for an interview by an asylum officer[.]" § 1225(b)(1)(A)(ii) (cleaned up). And if the officer determines that the alien has a credible fear of persecution, "the alien *shall* be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii) (emphasis added).

Section 1252(a), in turn, contains a jurisdiction-stripping provision applicable to immigration actions arising under § 1225(b)(1). *See* § 1252(a)(2). Section 1252(a)(2) reads:

> (2) Matters not subject to judicial review
>
> (A) Review relating to section 1225(b)(1)

[1] As an alternative to detention under § 1225(b)(1), the Respondents contend that § 1231 is equally applicable because the IJ entered a "final order of removal" on June 2, 2026. Resp. at 8–10. We disagree. Gonzalez Acosta reserved his right to appeal that order and timely appealed it to the BIA. *See* June 2, 2026 IJ Order [ECF No. 7-11] at 5; BIA Filing Receipt [ECF No. 7-12] at 2. An IJ's removal order becomes final when the BIA affirms it or when the period for seeking BIA review expires. *See* 8 U.S.C. § 1101(a)(47)(B) (providing that "orders of deportation" "become final upon the earlier of (i) a determination by the Board of Immigration Appeals affirming such order; or (ii)the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals."). Nothing before us indicates that the BIA has resolved Gonzalez Acosta's appeal. On this record, then, the Respondents haven't established that the June 2 order is administratively final or that § 1231's post-final-removal-order detention regime applies. Indeed, the Government's own declaration says that Gonzalez Acosta "has appealed this order to the Board of Immigration Appeals" and remains detained "while proceedings are pending." Delgado Decl. ¶¶ 16–17.

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review [—]
>
> (i) except as provided in [section 1252(e)], any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title,
>
> (ii) except as provided in [section 1252(e)], a decision by the Attorney General to invoke the provisions of such section,
>
> (iii) the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title, or
>
> (iv) except as provided in [section 1252(e)], procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

§§ 1252(a)(2)(A)(i)–(iv) (cleaned up).

Additionally, under Section 1252(a), federal courts of appeals provide the exclusive forum through which petitioners may seek review of expedited removal orders. *See, e.g.*, § 1252(a)(2)(D) ("Nothing in . . . this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." (cleaned up)); § 1252(a)(5) ("Notwithstanding any other provision of law . . . including [28 U.S.C.] section 2241 . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an [expedited] order of removal[.]" (cleaned up)).

But Congress carved out only a narrow exception in § 1252(e) for *districts* courts, permitting lower courts to conduct limited habeas corpus review of expedited removal orders under specified circumstances. *See* § 1252(e)(2). The review permitted under § 1252(e) is confined to three tightly circumscribed factual questions: (1) "whether the petitioner is an alien"; (2) "whether the petitioner was ordered removed" under § 1225(b)(1); and (3) "whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence," "has been admitted as a refugee[,]" or "has been granted asylum[.]" *Id.* §§ 1252(e)(2)(A)–

(C). Outside the narrow window of review permitted by § 1252(e)(2), district courts may not review "any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)," including "the application of such section to individual aliens[.]" §§ 1252(a)(2)(A)(i), (iii).

Those provisions resolve this case. Here, DHS placed Gonzalez Acosta in expedited-removal proceedings under § 1225(b)(1) and issued a Form I-860 Notice and Order of Expedited Removal on June 27, 2021. *See* Notice and Order of Expedited Removal [ECF No. 7-3] at 2; Delgado Decl. ¶ 7. Under § 1252(e), our review is limited to "whether such an [expedited removal] order in fact was issued and whether it relates to the petitioner." § 1252(e)(5) (cleaned up); *see also* § 1252(e)(2)(B) (investing district courts with the jurisdiction to determine "whether the petitioner was ordered removed").

Our Petitioner, however, urges us to go further and determine whether the Respondents have "established a lawful statutory basis for continued detention under Petitioner's *current procedural posture*." Reply at 4 (emphasis added). In other words, Gonzalez Acosta asks us to decide whether "the procedural developments reflected in the Government's own exhibits, including the favorable credible fear review, the filing of a Notice to Appear, [and] the commencement of removal proceedings before an Immigration Judge" displaced § 1225(b)(1) as the statutory authority governing his detention. *Id.* at 3 (cleaned up). Whatever the merits of that argument, answering it would require us to determine whether § 1225(b)(1) presently applies to Gonzalez Acosta, an "individual alien." 8 U.S.C. § 1252(a)(2)(A)(iii). And Congress has *expressly* withdrawn our jurisdiction to make *that* determination. *See* § 1252(e)(5) ("In determining whether an alien has been ordered removed under section 1225(b)(1) of this title, the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal."); *see also Pineda v. Customs & Border Prot.*, 544 F. App'x 925, 926

(11th Cir. 2013) (affirming district court's dismissal of habeas petition for lack of jurisdiction, holding the "INA bars judicial review of any claim arising from or relating to the implementation or operation of an expedited removal order"); *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1155–56 (9th Cir. 2022) ("Once the expedited removal procedure in § 235(b)(1) has been invoked," § 1252(a)(2)(A)(iii) "stands as a flat prohibition on any judicial review of such matters.").

That's so even though Gonzalez Acosta characterizes his claim as a challenge to the statutory authority under which he was detained rather than to the merits of the underlying expedited-removal order. The relief he seeks necessarily depends on our deciding that § 1225(b)(1) no longer governs him. *See* § 1252(e)(5)("There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal."); *Montelier Chaviano v. Bondi*, 2025 WL 1744349, at *4 (S.D. Fla. June 23, 2025) (Damian, J.) (concluding that a detention challenge "arises from" and is "related to" the expedited-removal process and therefore falls within § 1252(a)(2)(A)'s jurisdictional bar). Section 1252(a)(2)(A)(iii) prohibits precisely that individualized inquiry. *See Carreno-Mendez v. Noem*, 2026 WL 925581, at *3 (S.D. Fla. Apr. 6, 2026) (Becerra, J.) ("Petitioner's challenge to his detention [under an expedited removal order] is also limited by § 1252(a) and (e)'s limiting provisions[,]" and "Petitioner['s] [release] on parole . . . does not change this conclusion." (cleaned up)). We therefore lack subject-matter jurisdiction over the Petition.[2]

* * *

[2] Even if we had jurisdiction to reach Gonzalez Acosta's due-process argument—and even assuming that § 1226(a)'s bond-hearing procedures applied—he's already received the process he says was missing. "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018). On June 1, 2026, an IJ gave Gonzalez Acosta an individualized bond hearing, applied the *Guerra* factors, and denied bond after finding that Gonzalez Acosta hadn't carried his burden. *See* June 1, 2026 IJ Order at 2. So, even assuming that § 1226(a) applies here, Gonzalez Acosta has received the bond hearing he wanted. That process doesn't guarantee him a favorable result. And, to the extent Gonzalez Acosta simply disagrees with the IJ's determination, we have no authority to redo it. *See United States v. Velasquez Velasquez*, 524 F.3d 1248, 1252–53 (11th Cir. 2008); 8 U.S.C. § 1226(e).

We therefore **ORDER AND ADJUDGE** that Erasmo de Jesus Gonzalez Acosta's Petition for Writ of Habeas Corpus [ECF No. 1] is **DISMISSED** *without prejudice* for lack of subject-matter jurisdiction. All pending motions are **DENIED as moot**, and all deadlines are **TERMINATED**. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on September 25, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record